Judges HEDRICK and MARTIN (Robert M.) concur.

---

ROBERT MAZZACCO v. HARVEY PURCELL AND ROSEMARY PURCELL

No. 8021SC566

(Filed 3 March 1981)

Negligence § 57.11– tree cutting accident – failure to warn plaintiff of dangerous condition

In an action by plaintiff to recover for injuries sustained when he was catapulted 30 to 40 feet by a rope during a tree cutting accident, defendants were not under a duty to warn plaintiff of a dangerous situation which they created by tying one end of a rope to that portion of the tree being cut, passing the rope over the limb of a second tree, tying the other end of the rope to the trunk of a third tree, and pulling the slack in the rope, since plaintiff did not establish that the situation created by defendants was in fact dangerous, and plaintiff, who had done tree removal and pruning on a part-time basis for three or four years, knew as much or more about the situation as defendants.

Judge CLARK dissenting.

APPEAL by plaintiff from *Davis, Judge.* Judgment entered 24 January 1980 in Superior Court, FORSYTH County. Heard in the Court of Appeals 8 January 1981.

This is a civil action wherein plaintiff seeks to recover damages for injuries sustained as a result of a tree-cutting accident which occurred on defendants' property. In paragraphs three through eight of a verified complaint filed 12 March 1979, plaintiff made the following allegations:

3. On July 2, 1977 the plaintiff was visiting the defendants at their home in Forsyth County as an invited guest.

On said date the defendants were cutting down a tree on premises owned by them and located in Forsyth County, North Carolina and the plaintiff, at the request of the defendants, was helping the defendants cut down said tree. In the process of doing so, the plaintiff's hand was injured and the plaintiff was taken to the hospital to have it attended to.

4. The tree that the defendants were cutting down was located next to the defendants' house. To prevent it from falling on their house, the defendants tied one end of a rope to the top of the tree, placed the rope over a limb of a second tree and tied the other end of the rope to the trunk of a third tree so that the tree that was being cut down could be pulled away from the house as it fell.

5. The tree was then notched on the side away from the house so that it would fall in that direction. One of the sons of the defendants began making the back cut on the side of the tree opposite the notch and the defendant Harvey Purcell and another of the defendants' sons began pulling in the direction they wanted the tree to fall in the manner of an archer pulling on the string of his bow.

6. When the plaintiff returned from the hospital he saw the defendant Harvey Purcell and one of his sons pulling the rope laterally and the other son making the back cut. He also observed that the tree being cut was leaning toward the house and toward the son making the back cut and that the back cut was going to miss the notch thereby allowing the tree to fall in any direction including the direction of the house and the son making the back cut. This appeared to the plaintiff to be a dangerous situation so the plaintiff ran to help the defendant Harvey Purcell and his son pull on the rope and guide the tree away from the house and the son making the back cut.

7. The defendant Harvey Purcell and the son pulling on the rope were on the outside of the rope and the bow like configuration formed by pulling the rope laterally and the plaintiff was on the inside. When the tree was severed it fell and violently jerked the rope taut, throwing the plaintiff through the air like an arrow shot from a bow a distance of approximately 30 feet where the plaintiff struck another

tree and fell to the ground causing injuries to the plaintiff as hereinafter referred to.

8. The injuries to the plaintiff were proximately caused by the negligence of the defendants in that:

A. They created a hazardous condition on their premises by using a rope in the manner described above when they either knew or should have known that said rope was not long enough to permit the tree being cut down to fall to the ground without violently jerking said rope taut and they permitted the plaintiff to place himself in a dangerous position with respect to said rope when they either knew or should have known that he was unaware of said danger.

B. They created a situation of danger to their house and to their son who was cutting said tree which caused the plaintiff to go to the aid of said house and son and they permitted the plaintiff to go to the aid of said house and son and place himself in a dangerous position when they either knew or should have known that the plaintiff was unaware of said danger.

C. They failed to warn the plaintiff of the dangerous condition of their premises as stated above when they either knew or should have known that the plaintiff was unaware of said dangerous condition.

.   .   .

Plaintiff further alleged that as a "proximate result of the defendants' negligence," plaintiff received injuries requiring hospitalization and medical treatment, and causing "great pain and suffering."

In their answer, defendants admitted paragraph three of the complaint, except for the allegation that defendants requested plaintiff's help, and paragraph four of the complaint, except for any allegation that defendant Rosemary Purcell was a participant. Defendants, however, denied the other paragraphs of the complaint quoted above as well as plaintiff's allegations with respect to the "proximate cause" and extent of plaintiff's injuries.

Plaintiff offered evidence at trial tending to show the following: In late June of 1977, plaintiff and his family came to

Pfafftown, North Carolina to visit his sister and brother-in-law, the defendants. Prior to coming, plaintiff had a telephone conversation with his sister relative to plaintiff's bringing tree cutting equipment with him in order to help defendants remove some trees. Plaintiff had done tree removal and pruning on a part-time basis for approximately three to four years. Plaintiff brought the equipment with him when he came to Pfafftown, and after he arrived, had "a general discussion" with defendants with respect to removing some trees that were overshadowing defendants' recently acquired house. Several days later, a Monday, plaintiff and his sister went to the house and spent six to eight hours removing and cutting up a number of smaller trees from the front yard. They returned the next day and removed more trees.

On the following Saturday, 2 July 1977, plaintiff went to the premises with his brother-in-law, defendant Harvey Purcell, and one of Purcell's sons, Wade, to remove the trees that plaintiff and his sister had been unable to remove. The men took plaintiff's equipment, which included a chain saw and a "very, very strong" rope with them. They removed two large trees and then began working on the "most crucial" tree at the rear of the house, "a large oak tree that was leaning right over the roof of the house and blocking a lot of sunlight and actually a danger to the house." This tree "towered 60-70 feet, maybe 80 feet in the air." Plaintiff climbed into the tree using a ladder from the roof of the house, and while plaintiff was pruning some of the branches, the chain saw he was using jumped and cut his hand "fairly severely." Plaintiff went to the hospital with his wife and his sister and received five stitches on one finger. His hand was bandaged.

Upon returning "about three, maybe four hours" later, plaintiff went to the rear of the house, where he observed Harvey Purcell and Purcell's son, John, pulling on plaintiff's rope. While plaintiff was at the hospital, Harvey Purcell and his sons had continued working, and had "rigged the rope for pulling over" the oak tree. Plaintiff looked up and saw Wade on the ladder from the roof to the oak tree, about "15 feet high at least," making a cut on the upper section of the tree with the chain saw. Plaintiff noted that Wade "already cut a notch in the tree and he was proceeding to make the back cut toward the notch." It appeared to plaintiff that the "back cut" Wade was

making might miss the notch, and based upon his experience in cutting trees, plaintiff knew that if the cut missed the notch, Wade would not be able to control the direction in which the upper section of the tree would fall and so plaintiff went over to where Harvey and John Purcell were pulling on the rope to help them pull the cut portion in the right direction when it fell.

The rope had been tied to the portion of the oak tree that was being taken down, but plaintiff was unsure how high up the rope was tied. This rope was "approximately 120 feet long." The other end of the rope was tied to another tree, but plaintiff was unaware of this when he went to help the others pull on the rope. When plaintiff came up to help Harvey and John Purcell, Harvey and John were pulling on the rope "to make it taut." Either Harvey or John then asked plaintiff, "Well, how are you going to pull with one hand?" Plaintiff then showed them how he could take the rope, and guiding it with his injured hand, pass it behind him to his other hand, in which he would hold the rope against his hip. Plaintiff, standing behind Harvey and John Purcell, began to help them pull on the rope. Harvey and John were between plaintiff and the house. The three men were "very close together, pulling" and they were "facing the tree being pulled." Harvey and John Purcell were on the "left side of the rope" while plaintiff was "on the right side of the rope." Plaintiff noticed that the portion of the rope behind him was "slack," "lying on the ground." No conversation took place between the three men at that time, except that plaintiff told the others he had received a couple of stitches and that he was all right. At one point while the men were pulling, plaintiff's wife and sister started to come over to help, but the men hollered at them to go back, which they did.

After "no longer than two minutes" from the time plaintiff began pulling on the rope, the portion of the tree being cut fell. The cut portion "came the way we were pulling it and as it fell the last thing I remember was Bill [Harvey Purcell] saying 'Turn it loose' and when the top of the tree came down the weight of that popped me." Plaintiff was "catapulted" through the air, "a distance of 30-40 feet" into a "large pine tree." Plaintiff did not remember being "catapulted" and his "next recollection" was being on the ground after striking the pine tree. The "wind had been knocked" from him. The cut portion of the tree

"ended in a dangling position from the rope," since the rope "was not long enough to let it get all the way to the ground." The cut portion "was approximately 15 to 20 feet in length and a good 12 inches in diameter," weighing "between 1500 and 2000 pounds."

Around 29 July 1977, plaintiff returned to defendants' home for a wedding, and went with defendant Harvey Purcell to the scene of the accident to look at other trees "that still had to be taken down." The men talked about what happened and "how far" the rope had "catapulted" plaintiff. Purcell told plaintiff that "he was amazed that the rope hadn't broken when this piece fell" and that "he knew that the rope was too short to allow this piece to fall clear to the ground and he thought that it might possibly break the rope and that he would have to buy [plaintiff] a new rope."

At the close of plaintiff's evidence, defendants moved for a directed verdict in their favor on the grounds that the evidence failed to establish any actionable negligence on the part of either defendant, and in the alternative, that the evidence showed that plaintiff was contributorily negligent as a matter of law. From a judgment granting defendants' motion and dismissing plaintiff's action, plaintiff appealed.

*Craighill, Rendleman, Clarkson, Ingle & Blythe, by John R. Ingle, for the plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice, by Allen R. Gitter and James M. Stanley, Jr., for the defendant appellees.*

HEDRICK, Judge.

From his complaint, brief, and oral argument, we understand plaintiff's theory of his case to be that defendants were negligent when they failed to warn plaintiff of a dangerous situation which they created by tying one end of a rope to that portion of the tree being cut, passing the rope over the limb of a second tree, tying the other end of the rope to the trunk of a third tree, and pulling the slack in the rope between the second and third trees into a "bow like configuration" so that plaintiff, being on the "inside" of the rope, was propelled thirty to forty feet to his injury when the portion of the tree being cut fell and jerked the rope "taut." Before we, or a jury, could determine whether plaintiff's theory is even *physically* plausible, it would

be essential to know the total length of the rope, the distances between each of the three trees, the position of the trees in relation to each other, the height of the limb on the second tree over which the rope was passed, the direction in which the rope was being pulled between the second and the third tree, the amount of slack in the rope between the second and third trees, and the direction plaintiff was propelled in relation to the three trees. While the evidence tends to show that the total length of the rope to be approximately 120 feet, the absence of any evidence as to the remaining essential facts enumerated above renders plaintiff's theory one of mere speculation and conjecture. Indeed, the only matter in the record before us which discloses the manner in which the rope was strung from the portion of the tree being cut, over the limb of a second tree and tied to the trunk of a third tree is in defendants' admission to paragraph four of the complaint. Our examination of the record discloses nothing supporting plaintiff's "bow like configuration" theory. Obviously there is evidence in the record tending to show that plaintiff was thrown through the air thirty to forty feet receiving injuries when he struck the pine tree and fell to the ground. However, negligence cannot be presumed from the mere occurrence of an injury. *Spell v. Mechanical Contractors, Inc.*, 261 N.C. 589, 135 S.E. 2d 544 (1964); *Cagle v. Robert Hall Clothes*, 9 N.C. App. 243, 175 S.E. 2d 703 (1970).

Assuming arguendo that plaintiff was an invitee on defendants' premises and that defendants therefore owed him a duty of ordinary care to maintain the premises in a safe condition and to warn of hidden dangers that have been or could be discovered by reasonable inspection, *Husketh v. Convenient Systems, Inc.*, 295 N.C. 459, 245 S.E. 2d 507 (1978); *Sibbett v. M.C.M. Livestock, Inc.*, 37 N.C. App. 704, 247 S.E. 2d 2, *disc. rev. denied*, 295 N.C. 735, 248 S.E. 2d 864 (1978), the evidence in the record before us is insufficient to raise an inference that defendants were negligent and that such negligence was a proximate cause of plaintiff's injuries.

If the situation created by defendants during the time plaintiff was at the hospital was in fact dangerous, plaintiff, since he was the expert in the work being done, knew as much, or more, than did defendants. When plaintiff returned from the hospital, he observed that defendants' son had "notched" the tree and was cutting with plaintiff's saw toward the notch. He

also observed that his rope, which he knew was 120 feet long, had been tied to the portion of the tree being cut and that defendant Harvey Purcell and his son were pulling on the rope to prevent the cut portion of the tree from falling toward the house. Plaintiff, aware of all these things, undertook to help pull the rope to make the tree top fall in the desired direction. The only fact of which plaintiff had no knowledge was that the end of the rope was tied to the third tree; however, there is nothing in the evidence to indicate that plaintiff could not have discovered this fact. On cross-examination, he testified: "When I picked it up I did not know that the end of the rope was wrapped around a tree. There was nothing that I know of, there was nothing that Bill [Harvey] Purcell did that would have prevented me from looking to see what it was wrapped around." In our opinion, any dangerous situation created by defendants was as obvious to plaintiff as it was to defendants. Defendants, therefore, had no duty to warn plaintiff of "hidden dangers."

The judgment appealed from is

Affirmed.

Judge MARTIN (Robert M.) concurs.

Judge CLARK dissents.

Judge CLARK, dissenting:

Considering the evidence in the light most favorable to the plaintiff, it appears that defendant knew the rope was tied to the third tree and that it was too short to permit the severed portion to fall to the ground, which would result in a sudden and forceful jerking and tightening of the rope likely to cause injury to anyone on the inside of the "bow." Knowing this, defendant and his son took a position of safety on the outside of the "bow." When plaintiff arrived at the scene while the tree was being cut, he realized defendant and his son needed help to prevent the leaning tree from falling on the house. He did not know the end of the rope was tied to the third tree, and his failure to so observe was not contributory negligence as a matter of law. He took a position on the inside of the "bow." About two minutes elapsed from the time plaintiff took that position until the tree was cut, during which time the chain saw was cut off and the ladies present were warned and directed to a position of safety. The circumstances were such that the failure of defendant to

warn plaintiff of this position of danger was sufficient evidence of negligence to present the question to the jury.

In my opinion this is another close case in which the trial judge should have reserved his ruling on the motion for a directed verdict until the jury had returned a verdict and then allow or deny a Rule 50(b) motion for judgment notwithstanding the verdict.